IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00754-GPG

KEITH E. PEER,

Applicant,

v.

DEBORAH DENHAM, Warden,

Respondent.

---

ORDER OF DISMISSAL

---

Applicant, Keith E. Peer, is a prisoner in the custody of the Federal Bureau of Prisons (BOP) and is incarcerated at the Federal Correctional Institution in Englewood, Colorado. Mr. Peer has filed *pro se* an Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) challenging a disciplinary hearing officer (DHO) decision. Applicant has paid the $5.00 filing fee.

On May 11, 2015, Magistrate Judge Gordon P. Gallagher entered an order (ECF No. 7) directing the Respondent to file a preliminary response to the Application asserting the affirmative defense of exhaustion of administrative remedies if the government intended to raise the defense. Respondent filed a preliminary response on June 1, 2015 (ECF No. 12) asserting the exhaustion defense. Mr. Peer filed a reply on June 18, 2015 (ECF No. 15), along with a Motion for Summary Judgment (ECF No. 16). On August 5, 2015, Respondent filed a status report with the Court advising that the DHO had held a rehearing on the challenged disciplinary conviction on July 31, 2015. (ECF No. 28). Mr. Peer thereafter filed an Addendum to Motion for Summary Judgment

(ECF No. 20), on August 7, 2015. Respondent filed a Supplement to Preliminary Response (ECF No. 30), on August 14, 2015. Mr. Peer filed a Reply (ECF No. 32), on September 8, 2015.

The Court must construe liberally Mr. Peer's filings because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. For the reasons stated below, this action will be dismissed.

**I. Factual Background and the Federal Application**

On December 13, 2012, Mr. Peer received an Incident Report charging him with committing an act prohibited by Code 111 ("Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia not prescribed for the individual by the medical staff.").[1] (ECF No 1-1 at 12). The charge arose out of the following incident:

> On November 30, 2012, at approximately 8:10 p.m., while conducting a visual search of I/M Keith PEER # 10899-085, as he left the visiting room, I observed I/M PEER clutching the upper portion of his socks with both hands as he removed each sock. I could hear an unknown sound coming from his socks. I/M PEER was moving very fast as he was undressing stating that he had to use the bathroom. After hearing the sound coming from I/M PEER'S socks, I told I/M PEER to give me his socks. Inside I/M PEER'S socks I located two small clear plastic baggies. One baggie was located inside each right and left sock[ ]. Each baggie contain[ed] 12 unknown brownish colored capsules. After locating the capsules, I directed I/M PEER to give me the baggies in his socks. I/M PEER then asked me if "We could just flush it" referring to the capsules. I told him "No" then contacted the Operations Lieutenant. The pills were confiscated and turned over to the duty Operations Lieutenant. I then escorted I/M

[1]The BOP's Prohibited Acts and Disciplinary Scale are codified at 28 C.F.R. § 541.3 (Table 1).

> PEER to the Special Housing Unit. I/M PEER'S person and clothing were both physically and visually inspected prior to him entering the visiting room and no contraband was found.

(*Id.*).

A DHO held a hearing on the Incident Report on February 20, 2013, and found Applicant guilty as charged. (*Id.* at 34-36). Mr. Peer was sanctioned with, *inter alia*, the forfeiture of 41 days of good time credits. (*Id.* at 36).

On July 31, 2015, the DHO held a re-hearing and reaffirmed Applicant's conviction of the Code 111 violation. (ECF No. 28-1).

Applicant claims in the § 2241 Application that he was denied due process in connection with the disciplinary conviction. (ECF No. 1 at 3). He maintains that he is innocent of the charged offense because the confiscated capsules were a dietary supplement, not a substance prohibited by Code 111. (*Id.*). For relief, he asks that the disciplinary conviction be expunged from his prison file.

In the Supplement to Preliminary Response, Respondent argues that Applicant's due process challenge to the February 20, 2013 DHO conviction should be dismissed as moot, or as procedurally defaulted. (ECF No. 30 at 2-3). Respondent further contend that any challenge to the DHO's July 31, 2015 decision on re-hearing must be dismissed for failure to exhaust administrative remedies. (*Id.*). For his part, Applicant argues that further exhaustion of administrative remedies would be futile, based on Respondent's argument that there is sufficient evidence to support the DHO's decision on re-hearing. (ECF No. 32 at 1-2; *see also* ECF No. 30 at 3-5).

## I. The Administrative Exhaustion Requirement

Exhaustion of available administrative remedies is a prerequisite to federal habeas corpus relief pursuant to 28 U.S.C. § 2241. *See Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam); *see also United States v. Wilson,* 503 U.S. 329, 335 (1992) ("Federal regulations have afforded prisoners administrative review of the computation of their credits, and prisoners have been able to seek judicial review of these computations after exhausting their administrative remedies" (citations omitted)."). The exhaustion requirement is satisfied through proper use of the available administrative procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (discussing exhaustion of administrative remedies in the context of 42 U.S.C. § 1997e(a)). A "narrow exception to the exhaustion requirement applies if an applicant can demonstrate that exhaustion is futile." *Garza*, 596 F.3d at 1203. Further, the exhaustion requirement may be excused if prison officials prevent of hinder a prisoner's efforts to exhaust administrative remedies. *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (addressing Prison Litigation Reform Act's exhaustion requirement).

The BOP administrative remedy procedure is available to federal prisoners. *See* 28 C.F.R. §§ 542.10 - 542.19. The administrative remedy procedure allows "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Generally, a federal prisoner exhausts administrative remedies by attempting to resolve the matter informally and then completing all three formal steps by filing an administrative remedy request with institution staff as well as regional and national appeals. *See* 28 C.F.R. §§ 542.13 - 542.15.

Exceptions exist to the standard exhaustion procedures. If a determination by a

DHO is at issue, the inmate may skip the initial appeal to the Warden and appeal the DHO's decision directly to the Regional Director. *See* 28 C.F.R. § 542.14 (d)(2). Appeal from an adverse decision is to the General Counsel (Central Office). *See* 28 C.F.R. § 542.15(a).

If an inmate fails to comply with the procedural requirements of the administrative remedy process, a request may be rejected at any stage of the process. 28 C.F.R. § 542.17(a). When a submission is rejected, the inmate is provided with a written notice as to the reason for rejection, and if the defect is correctable, a reasonable extension of time to correct the defect and resubmit the appeal. 28 C.F.R. § 542.17(b). If an appeal is rejected and the inmate is not given an opportunity to correct the defect, the inmate may appeal the rejection to the next appeal level. 28 C.F.R. § 542.17(c). The coordinator at the next appeal level may affirm the rejection, direct it to be submitted at the lower level, or accept it for filing. *Id.*

**II. Mr. Peer's Compliance with the BOP Administrative Review Procedures**

Mr. Peer filed an appeal of the DHO's February 13, 2013 decision with the North Central Regional Office on April 1, 2013. (ECF No. 1-1 at 3). The Regional Director denied the appeal on June 18, 2013. (*Id.* at 2).

On September 27, 2013, Mr. Peer received documents from the North Central Regional Office in response to a Freedom of Information Act (FOIA) request he had submitted in March 2013. (ECF No. 1 at 13-15; No. 1-1 at 6). The documents included correspondence between FCI-Englewood administrators and the District Attorney's office in which the District Attorney stated, in a letter dated December 5, 2012, that since [the prohibited substance] is a dietary supplement, we decline [to prosecute."

(ECF No. 1 at 6).

On October 12, 2013, Mr. Peer filed an appeal of the Regional Director's decision to the Central Office. (ECF No. 1-1 at 8). The Central Office responded on November 4, 2013, directing Applicant to submit verification as to why his appeal was untimely. (*Id.* at 54). On November 30, 2013, Applicant wrote a letter to the Central Office explaining that his appeal was untimely because he had been waiting to receive documents in response to his FOIA request. (*Id.* at 14-16). The Central Office informed Applicant that his untimely appeal would not be accepted without staff verification. (*Id.* at 60). Applicant states that his counselor thereafter refused to provide the requested staff verification. (ECF No. 1 at 6).

In July 2014, after Mr. Peer filed additional administrative remedy requests, prison staff learned that the capsules confiscated from Applicant in 2012 were still at the facility and thereafter sent one of the capsules to the Colorado Bureau of Investigation (CBI) for testing. (*Id.* at 7). On August 15, 2014, the CBI issued a lab report stating that "Controlled substances were not detected." (*Id.* at 7, 16). The DHO was informed of the test results, but no further action was taken on the challenged disciplinary conviction at the time the § 2241 Application was filed. (*Id.* at 7). On July 31, 2015, the DHO held a re-hearing, considered new evidence, and concluded that Applicant was guilty of the Code 111 violation. (ECF No. 28-1).

**III. Analysis**

The Court agrees with Respondent that the § 2241 Application is moot to the extent it challenges the legality of Applicant's February 2013 DHO conviction for

violation of Code 111 because the DHO held a rehearing in July 2015 and considered new evidence. Accordingly, the Court must decide whether to dismiss the Application on the merits without requiring Mr. Peer to exhaust administrative remedies as to the DHO's July 2015 decision on re-hearing, *see United States v. Eccleston*, 521 F.3d 1249, 1253 (10th Cir. 2008), or, dismiss this action without prejudice so that Applicant can fulfill the exhaustion requirement. As discussed below, the Court's preliminary review of the merits indicates that dismissal with prejudice is not appropriate at this time.

**A. Legal Standards Applicable to Prison Disciplinary Convictions**

Mr. Peer asserts in the Application that his prison disciplinary conviction for committing an act prohibited by Code 111 violated due process because he is "actually innocent" of the charged offense. (ECF No. 1 at 2). He states that the confiscated capsules contained an over-the-counter dietary supplement (Growth Hormone Release). (*Id.* at 3). Applicant also contends that the NIK [Narcotics Identification Kit] test results, which showed that the capsules tested positive for amphetamines, were not reliable, as demonstrated by the contradictory CBI lab results. (ECF No. 26 at 1).

"It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (applying law to federal prisoner) (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir.1996) (internal quotation marks and citation omitted)). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v.*

*McDonnell*, 418 U.S. 539, 556 (1974).

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67).

Moreover, to comport with due process, there must be *some* evidence to support a disciplinary conviction. *Hill*, 472 U.S. at 454. "Ascertaining whether this standard is satisfied does not require examination of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56. A disciplinary board's decision can be upheld by a reviewing court "even if the evidence supporting the decision is 'meager.'" *Mitchell*, 80 F.3d at 1445 (10th Cir. 1996) (quoting *Hill*, 472 U.S. at 457).

"[A]n assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus". *See LaFevers v. Gibson*, 238 F.3d 1263, 1265 n. 4 (10th Cir. 2001). Instead, Mr. Peer must demonstrate that the disciplinary conviction and concomitant revocation of good time credits violated his federal due process rights. Accordingly, the Court construes liberally Applicant's assertion of actual innocence, and his challenge to the lack of corroborating independent test results, as an attack on the sufficiency of the evidence to support his prison disciplinary conviction.

**B. The DHO Reports**

The original DHO hearing was held on February 20, 2013. (ECF No. 1-1 at 34). The DHO determined that Applicant committed an act prohibited by Code 111 based on the following evidence:

> You admitted to the DHO that you did introduce capsules through the visiting room as documented in the incident report. You claim that the substance is a dietary supplement so the charge should be 331 not 111. The capsules in your possession were tested utilizing the NIK test kit which produced a positive reading for amphetamines. Your claim that the capsules were GHR [Growth Hormone Release] was not supported by any evidence you provided. Two tests were performed using two different capsules with both testing positive for amphetamines. Based on the fact that capsules you introduced through the visiting room and had in your possession tested positive for amphetamines Code 111 is supported.

(*Id.* at 36).

A re-hearing on the disciplinary conviction was held on July 31, 2015. (ECF No. 28-1). The DHO considered the same evidence presented at the February 2013 hearing. (*Id.* at 1-2). In addition, the DHO reviewed and considered a CBI Lab Report which stated that the CBI tested one of the capsules in August 2014 and "[c]ontrolled substances were not detected." (*Id.* at 3; *see also* ECF No. 1-1 at 73). The DHO also considered a memorandum from Lt. Kizzier, with attached test results, stating that on August 26, 2014, Lt. Kizzier retrieved one of the capsules from the evidence file and tested the capsule with the NIK "A." (*Id.* at 3). The results of the NIK test were positive for amphetamines. (*Id.*). The DHO determined the following on re-hearing:

> After careful consideration, the DHO found that the inmate committed the prohibited act(s) of Code 111, Introduction Or Making of any Narcotics, Marijuana, Drugs Alcohol, Intoxicants, Or Related Paraphernalia, Not Prescribed For the Individual By the Medical Staff, based on the greater weight of the evidence. At the completion of a visit you were searched and staff discovered you in possession of clear capsules containing a tan powder which tested positive for amphetamines using the NIK test "A." You admitted to bringing the capsules through the visiting room but deny

> the charge of Code 111 stating that the capsules are a dietary supplement. You also called to question the testing of the capsules. You claim the documents you introduced shows the initial test (NIK test) was only a presumptive test and the capsules should have been sent to a laboratory for a confirmation test. You referred to the test conducted by the CBI which stated controlled substances were not detected. Although the test did state that controlled substances were not detected in the capsule tested, the report did not say amphetamines were not found. Concerning the need for a second test, there is no requirement of a second test by the Bureau Of Prisons when testing a substance for an administrative discipline hearing. The NIK test is considered reliable and is the standard test accepted by the Bureau. On December 4, 2012 two capsules were tested with the NIK test kit and both tested positive for amphetamines. On August 15, 2014 one capsule was tested at the CBI laboratory and the results were "controlled substances were not detected." There was no mention of testing for amphetamines. On August 26, 2014 another of the capsules was tested using the NIK test kit "A" and tested positive for amphetamines. The capsules found in your possession were not in any type of commercial packaging identifying them and had no markings on the capsules. The DHO did consider your defense the capsules were a dietary supplement. This includes the documents submitted by you as well as the report from the CBI. The fact that a total of 3 capsules were tested by approved means and were positive for amphetamines places you in violation of Code 111.

(ECF No. 28-1 at 3). The DHO then reaffirmed the disciplinary sanctions imposed as a result of the February 20, 2013 DHO hearing. (*Id.*).

**C. Preliminary Analysis of Due Process Claim**

The Court recognizes that, in the context of a prison disciplinary hearing, prison officials generally are entitled to rely on institutional test results, such as the NIK field test, absent any evidence of unreliability or irregularity in conducting the tests. *See*, *e.g.*, *Terry v. Dep't of Public Safety & Correctional Services*, No. 11-cv-01686, 2012 WL 2564779, at *8 (D. Md. June 29, 2012) (concluding that results of NIK test constituted "some evidence" to support prison disciplinary conviction for possession of a substance containing amphetamines even though drug test was later shown to have resulted in a false positive). *Accord Higgs v. Bland,* 888 F.2d 443, 449 (6th Cir.1989) (stating that

while "a test which produced frequent incorrect results could fail to constitute some evidence' under the *Hill* standard," in the absence of evidence that "the probability of false results was more than a mathematical possibility," a positive urinalysis "constitutes some evidence' from which [a disciplinary] board could conclude that a tested inmate was guilty of the offense of drug use."). The NIK test has been deemed generally reliable. *See, e.g., United States v. Sanchez*, 50 C.M.R. 450, 453-55, 1975 WL 15648 (A.F.C.M.R.1975) (allowing a NIK test and quoting literature on its reliability); *see also Terry*, 2012 WL 2564779, at *8.

Furthermore, prisoners do not have a generalized right to a retest in the wake of a disputed test result. *See, e.g., Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000) ("Henson identified no specific need for the retest (either by showing that the test is unreliable or that it was improperly administered) or any case law supporting a general right to retest positive drug results" in the context of a prison disciplinary proceeding); *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir.1992) (holding that a prison could deny a prisoner's request for a follow up drug test, as "accommodating the inmate's asserted right would create a ripple effect' among other prisoners, and impose a significant administrative burden on prison officials"); *Easter v. Saffle*, No. 02-6044, 51 F. App'x 286, 289 (10th Cir. 2002) (unpublished) (concluding that a "single urinalysis amounts to 'some evidence' and thus satisfies due process" even if the risk of a false positive exists); *see also Bolanas v. Coughlin*, 91-cv-5330 (KC), 1993 WL 762112, at *21 (S.D.N.Y. Oct. 15, 1993) (concluding that prisoner's due process rights in prison disciplinary proceeding were not violated because "[i]t was not improper to rely on only one test of the white powder. The test used was reliable, and it was not necessary to send it outside the facility to be tested, as plaintiff requested.").

However, in this case, following Applicant's February 2013 disciplinary conviction in which the DHO relied solely on NIK test results, the CBI performed an independent drug test on one of the confiscated capsules, at the request of Applicant and prison officials. The DHO then held a re-hearing and considered the results of the CBI test. The DHO concluded that the CBI test results were not probative because the CBI report stated only that "controlled substances were not detected," but "the report did not say amphetamines were not found." (ECF No. 28-1 at 3). It appears that the DHO defined "controlled substances" to exclude amphetamines, even though both the United States and the State of Colorado have listed amphetamines as a Schedule II controlled substance. *See* 21 C.F.R. § 1308.12(d); COLO.REV.STAT. § 18-18-204 (2)(c)(I). Because the present record raises a question as to whether the CBI test results directly undermined the reliability of the NIK test results, the Court is not convinced that Applicant's due process challenge to the DHO's decision on rehearing is without merit.

The Court finds that dismissal of this action without prejudice is warranted so that the BOP has the first opportunity to consider the Applicant's challenge to the July 2015 DHO decision on rehearing before a judicial determination of the merits. *See Woodford v. Ngo*, 548 U.S. 81, at 89 (2006) (discussing the purposes of the administrative exhaustion requirement).

A federal district court can ignore the exhaustion requirement if exhaustion of administrative remedies would be futile. *Garza*, 596 F.3d at 1203. However, the futility exception is narrow. *Id.* Applicant argues in his Reply to the Supplement to Preliminary Response that it would be futile to require him to exhaust administrative remedies with respect to the DHO's July 2015 decision, based on statements made by the Respondent in the Supplement to Preliminary Response that Applicant is not "actually

innocent" of the Code 111 violation and that it "is more likely than not" that the DHO's decision on rehearing was supported by "some evidence. " (ECF No. 32 at 2; ECF No. 30 at 4-5).

The Court is not persuaded that exhaustion of administrative remedies would be futile because the reliability of the NIK test is undermined by the CBI test. *See Brown v. Wands*, 463 F. App'x 806, 808 (10th Cir. May 9, 2012) (unpublished) (concluding that petitioner failed to demonstrate futility where he "has not pointed to any administrative rule under which he will categorically be denied relief in the grievance process, and the reasons given in response to his grievance at the staff level do not prove that his regional and national appeals will be denied as well").

Because Applicant does not assert any other grounds for excusing the exhaustion requirement, the § 2241 will be dismissed without prejudice so that Applicant can pursue administrative relief.

**IV. Orders**

For the reasons discussed above, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1), filed by Applicant Keith E. Peer, on April 10, 2015, is DENIED as follows: Applicant's due process challenge to the February 13, 2013 DHO decision is moot; and, Applicant must exhaust administrative remedies for the July 31, 2015 DHO decision on rehearing before seeking federal habeas corpus relief. It is

FURTHER ORDERED that this action is DISMISSED WITHOUT PREJUDICE. It is

FURTHER ORDERED that Applicant's Motion for Summary Judgment (ECF No. 16) and Request to Stay Decision on Motion for Summary Judgment (ECF No. 26) are

DENIED as moot. It is

FURTHER ORDERED that leave to proceed *in forma pauperis* is denied for the purpose of appeal. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Mr. Peer files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED September 23, 2015, at Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court